UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PETER PELLOW,

      Plaintiff.

v.                                                          Case No. 05-73815

DAIMLER CHRYSLER SERVICES NORTH                Honorable Nancy G. Edmunds
AMERICA, LLC.

      Defendant.

_____/

**ORDER GRANTING DEFENDANT'S MOTION FOR RECONSIDERATION [19],
VACATING COURT'S ORDER DENYING DEFENDANT'S MOTION TO COMPEL
ARBITRATION AND FOR SUMMARY JUDGMENT [18], AND GRANTING
DEFENDANT'S MOTION TO COMPEL ARBITRATION AND FOR SUMMARY
JUDGMENT [12]**

This matter comes before the Court on Defendant Daimler Chrysler Services North

America's Motion for Reconsideration of the Court's Order Denying Defendant's Motion to

Compel Arbitration and for Summary Judgment.  Defendant argues that the Court's Order

contained a palpable defect, i.e., that the Court misunderstood the Michigan Supreme

Court's holding in *Heurtebise v. Reliable Business Computers, Inc.*, 550 N.W.2d 243 (Mich.

1996).  Per a Court Order requesting further briefing, Plaintiff Peter Pellow has responded

to Defendant's Motion.

After taking a closer look at the briefs and the controlling case law, the Court agrees

with Defendant.  For the following reasons, the Court GRANTS Defendant's Motion for

Reconsideration, VACATES the July 20, 2006 Order, and GRANTS Defendant's Motion to

Compel Arbitration and for Summary Judgment, with the caveat that certain provisions within the Arbitration Procedure must be STRICKEN.

## I.   Background[1]

When Plaintiff sought a job with Defendant in 1999, his application included the following language: "In the event that I am employed by Chrysler Corporation or any of its subsidiaries . . . I agree that I will be governed by and must comply with Chrysler's Employee Dispute Resolution Process ["EDRP"], which requires many employment-related claims to be resolved exclusively through arbitration."  (Doc. 12 Ex. 1.)  His application further provided that he was applying for employment "of an indefinite duration, terminable at will and for any reason . . . ."  (*Id.*)

A copy of the EDRP was not attached to Plaintiff's application, but was available from a number of sources.  (Doc. 12 Ex. 5.)  The EDRP is a process to resolve disputes between employees and Defendant.  It consists of the following five steps, and culminates in binding arbitration administered by the American Arbitration Association ("AAA"):

A       Employee completes and signs Part A of the EDRP form, and submits it to his/her supervisor and Human Resources within 180 calendar days of the dispute.

B       Supervisor responds to employee by filling out Part B of the EDRP form, and returns it to the employee within 15 calendar days.

C       Employee completes and signs Part C of the EDRP form, and returns it to the Corporate Diversity Office, within 15 calendar days.

D       Corporate Diversity Office completes Part D of the EDRP form, and returns it to the employee within 20 calendar days.

E       Employee completes and submits Part E to the AAA.

---

[1]Many of these background facts are drawn directly from the Court's July 20, 2006 Order.

The EDRP also provides that if Defendant does not return Part B or Part D on a timely basis, the employee may immediately proceed to the next level of the EDRP in accordance with the time requirements.  (Doc. 12 Ex. 2.)

When the process reaches the arbitration stage, the EDRP follows an "Arbitration Procedure," which is a separate document but which is referenced in--and, in digital form, hyperlinked from--the EDRP.  The Arbitration Procedure contains a number of provisions at issue here.  Most importantly, the Arbitration Procedure provides that Defendant "reserves the right to amend, modify, suspend, or terminate all or part of this EDRP at any time at its sole discretion."  (Doc. 12 Ex. 3 § 14.)[2]  The Arbitration Procedure also contains several provisions limiting the arbitrator's authority to grant relief.  These will be discussed in greater detail below.

Defendant hired Plaintiff, and Plaintiff worked as an accounting clerk from 1999 until June 6, 2005, when Defendant terminated his employment for missing several days of work due to migraine headaches.  On June 22, 2005, Plaintiff began the EDRP process.  Instead of completing only Part A, in accordance with the EDRP, Plaintiff also completed Part C.  Then, without waiting for Defendant's response, Plaintiff demanded arbitration from the AAA.  On June 27, the AAA denied Plaintiff's demand for arbitration because the EDRP had not yet been fully completed.  (Doc. 15 Ex. O.)  On June 29, Defendant received the EDRP form, and on July 6, 2005, Defendant completed only Part B of the form, so that Plaintiff could amend Part C.  Plaintiff claims that he never received the EDRP form with

_____

[2]The Arbitration Procedure consists of eleven numbered sections, followed by three sections without identifying numbers.  For purposes of this Order, the final three sections are designated §12, §13, and §14.

3

Part B completed, nor did he receive notification from Defendant explaining that he needed to amend Part C.  Plaintiff filed the present lawsuit on October 5, 2005.  On April 5, 2005, Defendant filed a Motion to Compel Arbitration and for Summary Judgment.[3]

## II.   Standard of Review

### A. Motion for Reconsideration

Pursuant to Rule 7.1(g) of the Local Rules for the Eastern District of Michigan, a motion for reconsideration may be filed within ten days after the order to which it objects is issued.  It should be granted if the movant demonstrates that the Court and the parties have been misled by a palpable defect and that a different disposition of the case must result from a correction of such palpable defect.  A motion that merely presents the same issues already ruled upon by the Court shall not be granted.

### B. Motion to Compel Arbitration

The Sixth Circuit set forth four determinations that the Court must make when determining whether to grant a motion to compel arbitration:

> first, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*Stout v. J.D. Byrider*, 288 F.3d 709, 714 (6th Cir. 2000).  Plaintiff bears the burden of proving, by a preponderance of the evidence, that he is asserting a claim that should be

---

[3]Defendant's Motion is captioned, "Motion to Compel Arbitration and Dismiss Pursuant to FRCP 56(C)."  Rule 56(c), however, deals with motions for summary judgment. Because Defendant relies on Rule 56(c), the Court assumes that it intended to caption its Motion a Motion for Summary Judgment.

4

heard in court, rather than by an arbitrator. *Anderson v. Delta Funding Corp.*, 316 F. Supp. 2d 554, 559 (N.D. Ohio 2004).

The Court must bear in mind that in passing the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.*, upon which Defendant brings this Motion, Congress's "preeminent concern" was to enforce arbitration agreements. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985). Moreover, there is "a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983).

## C. Motion for Summary Judgment

Summary judgment is appropriate only when there is "no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to the party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Id.* at 323. Once the moving party meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, the Court must "construe the evidence and draw all reasonable inferences in favor of the nonmoving party." *Id.* The non-moving party may not

5

rest upon its mere allegations, however, but rather "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The mere existence of a scintilla of evidence in support of the non-moving party's position will not suffice. Rather, there must be evidence on which the jury could reasonably find for the non-moving party. *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 432 (6th Cir. 2002).

## III.  Discussion

The only issue discussed in detail in the Court's July 20 Order was whether the arbitration agreement was unenforceable due to Defendant's express reservation of the right to modify or terminate the EDRP. Having resolved that issue in Plaintiff's favor, the Court did not reach Plaintiff's other arguments. As the Court has now granted Defendant's Motion for Reconsideration, however, it will address each of Plaintiff's arguments in turn.

### A.  Mutuality of Assent

Plaintiff argues that there was no valid agreement to arbitrate for two reasons. First, that Defendant's reservation of the right to modify or revoke the arbitration agreement demonstrates that Defendant did not intend to be bound, and second, that Plaintiff himself did not agree to arbitrate FMLA claims. The Court's July 20, 2006 Order dealt only with the first of these issues.

### 1. Defendant's Assent

At issue here is whether an employer's express reservation of the right to modify or revoke a term of employment renders its agreement to such a term unenforceable. As this is a matter of state contract law, the starting point is *In re Certified Question*, 443 N.W.2d 112, 121 (Mich. 1989), in which the Michigan Supreme Court held that "[a]n employer may . . . unilaterally change a written discharge-for-cause policy to an employment-at-will policy even though the right to make such a change was not expressly reserved from the outset." The parties disagree about the extent to which this holding applies to the present case.

Defendant cites this holding to argue that "under Michigan law, the employer has the right to modify or revoke *any policy*, except for possibly vested entitlements, whether or not the employer has expressly notified its employees of its intent to reserve this right. (Doc. 19 p. 2 (emphasis added).)[4] This argument is appealing as a matter of common sense: If an employer can unilaterally revoke or amend something as important as the job security offered by a for-cause-only termination agreement, why not an arbitration agreement as well?

In *Heurtebise v. Reliable Business Computers,* 523 N.W.2d 904, 905 (Mich. Ct. App. 1994), the Michigan Court of Appeals applied *In re Certified Question* to an arbitration agreement, noting that "it is well established under Michigan law that mutual assent to a

---

[4]A footnote of the court's opinion lends some credence to this theory. *In re Certified Question*, 443 N.W.2d at 121 n. 17 ("Our answer might be different . . if the employer's change in policy purported to affect employee benefits already accrued or 'vested.'"). But the court also "emphasize[d] that [its holding] is necessarily limited by the wording of the certified question which asks whether an employer under the circumstances set forth may unilaterally change from a discharge-for-cause to an employment at will policy." *Id.* at 121-22.

term of employment is not required."  As Plaintiff points out, however, however, the Michigan Supreme Court rejected this analysis on appeal:

> We note that the . . . citation of *In re Certified Question*, which held that an employer could *unilaterally* change a written policy, was misplaced. Assuming arguendo that the Michigan Arbitration Act applies, it provides that neither party to an arbitration agreement can revoke the agreement without the other party's consent.

*Heurtebise v. Reliable Bus. Computers, Inc.*, 550 N.W.2d 243, 246 n.5 (Mich. 1996) (citations omitted) (emphasis in original).  Notably, the Michigan Supreme Court did not take issue with the Court of Appeals's description of the holding in *In re Certified Question*; it simply noted that the case conflicts with the Michigan Arbitration Act.  Defendant brought the present Motion under the Federal Arbitration Act, however, and Plaintiff has not demonstrated any conflict between *In re Certified Question* and federal law.  Thus, while reliance on *In re Certified Question* was wrong under the Michigan Arbitration Act, it may be correct under the Federal Arbitration Act.  As noted above, common sense suggests that it applies here.

Despite its dismissal of *In re Certified Question*, the Michigan Supreme Court's opinion in *Heurtebise* is another key precedent.  In its July 20 Order, this Court described that case as follows:

> In *Heurtebise* . . . , the Michigan Supreme Court held that if an employee handbook contains an arbitration provision that can be unilaterally altered by the employer, the employer does not intend to be bound by it, and the arbitration agreement is unenforceable because a contract does not exist between the parties.

(Doc. 18 p. 5.)  This broad description was inaccurate.  *Heurtebise* merely stands for the proposition that *if* the employer does not intend to be bound, an arbitration agreement is unenforceable.  550 N.W.2d at 247.  Under the facts before it, the Michigan Supreme Court

8

held that the employer did not intend to be bound.  Most importantly, the employer had explicitly disclaimed the existence of any contract or any intent to be bound: "It is important to recognize and clarify that the Policies specified herein do not create any employment or personal contract, express or implied." *Id.* (emphasis removed).  In reversing, the court noted that this crucial statement "was not part of the record before the Court of Appeals.  Had the Court of Appeals been able to examine the entire handbook, we are confident that it would have reached the same conclusion."  *Id.*  In other words, the express disclaimer made all the difference in the case.

Two Michigan Court of Appeals cases have distinguished *Heurtebise* to hold that an employer's reservation of the right to modify an employee manual does not necessarily render an arbitration provision unenforceable.  In *Rushton v. Meijer, Inc.*, 570 N.W.2d 271 (Mich. Ct. App. 1997), *overruled on other grounds by Rembert v. Ryan's Family Steak Houses, Inc.*, 596 N.W.2d 208 (Mich. Ct. App. 1999), the court contrasted the defendant Meijer's employee handbook with the handbook at issue in *Heurtebise*:

> The dissimilarities are marked.  Unlike the *Heurtebise* handbook, the Meijer handbook does not contain language stating that Meijer does not intend to be bound by its provisions.  Further, it does not indicate that Meijer considers the policies not to create a contract and, finally, rather than an at-will termination policy, this instrument has consideration running to the employee in the form of an express promise of termination from employment only for just cause. . . .  There is, however, reservation language in the Meijer handbook stating that the existing policies may be "modified or deleted" by the employer.

*Rushton*, 570 N.W.2d at 273-74.  The court found the employee handbooks sufficiently different, and therefore enforced Meijer's arbitration clause:

> It must be recalled that this instrument is an agreement to control an ongoing course of conduct between the employer and its employees.  By its clear terms, they are both bound by it unless and until the employer chooses to

9

change it.  Even then, the employer cannot retroactively escape from its requirements.  Any change can only take effect prospectively.  Accordingly, because the alleged improper acts by the employer at issue here came before any change was made in the agreement by the employer (in fact, as far as we know, even now no changes have been instituted by the employer), both parties are bound.

*Id.* at 274 (citation omitted).[5]  The language at issue in *Rushton* is substantially similar to the language at issue in the present case, with the exception that Plaintiff here was an at-will employee, whereas the plaintiff in *Rushton* would be terminated for cause only.

The second Michigan Court of Appeals case to address this issue is *Hicks v. EPI Printers, Inc.*, 702 N.W.2d 883 (Mich. Ct. App. 2005).  There, the court relied on *Rushton*, finding the employee handbooks in the two cases materially indistinguishable.  The court extended the holding in *Rushton* to cases involving at-will employment, albeit inadvertently.[6]  Even if an employee does not have "consideration . . . in the form of an

---

[5]The court cited *In re Certified Question* for the proposition that unilateral changes are only effective prospectively.  As in *Heurtebise*, however, the reliance on *In re Certified Question* may have been misplaced in a case brought under the Michigan Arbitration Act.  *See Heurtebise*, 550 N.W.2d at 246 n.5.

[6]The court in *Hicks* explained,

In *Rushton*, as in this case, there is an at-will employment relationship, a manual with contractual terms that included mandatory arbitration and the employer's exclusive right to prospectively alter the terms of the relationship, and the fact that the employer made no changes between the beginning and the end of the relationship.  The parties in this case had a contract that included a detailed arbitration provision.  The provision appeared in large bold-faced text.  Finally, the manual's severability clause reflects the understanding that the terms of the manual are meant to be enforceable . . . .  Underlying this language is the presumption that the manual contains enforceable terms. . . .  For all these reasons, the parties intended the manual, including the arbitration provision, to contractually bind them to certain employment terms.

*Hicks*, 702 N.W.2d at 888.

express promise of termination from employment only for just cause," *Rushton*, 570 N.W.2d at 274, as is the case here and in *Hicks*, there may still be consideration for his promise to arbitrate.

Here, Defendant was in essence telling Plaintiff, "We agree to review your application if you agree to abide by these terms."  Indeed, a separate paragraph dealing with the contractual statute of limitations says exactly that: "In consideration of Chrysler's review of my application, I agree that any claim or lawsuit . . . must be filed no more than six . . . months after the date of the . . . action . . . ." (Doc. 15 Ex. C.)  Thus, Defendant's review of Plaintiff's application constituted valid consideration for Plaintiff's promise to arbitrate claims.  *See, e.g., Rembert v. Ryan's Family Steak Houses, Inc.,* 596 N.W.2d 208, 211 (Mich. Ct. App. 1999) ("employers are . . . free to require arbitration of claims as a condition of employment . . . ."); *Lowry Computer Prods. v. Head*, 984 F. Supp. 1111, 1115 (E.D. Mich. 1997) ("continuing employment is sufficient consideration to support the agreement" not to compete); *Robert Half Int'l, Inc. v. Van Steenis*, 784 F. Supp. 1263, 1273 (E.D. Mich. 1991) ("continued employment constitutes sufficient consideration for . . . restrictive covenants in the Employment Agreement . . . where . . . the . . . employment is otherwise 'at will'").

As important as the existence of consideration is Defendant's acknowledgment of its existence, since Plaintiff's main argument is that Defendant never intended to create a contract.  There is additional evidence of Defendant's intent to contract.  Just as in *Hicks*,

_____

Thus, the Michigan Court of Appeals in *Hicks* misread the opinion in *Rushton*. Instead of extending *Rushton* to an at-will employment relationship, the court wrongly asserts that *Rushton* was an at-will case.  Notwithstanding this mistake, however, this Court believes that the court in *Hicks* reached the correct result.

11

Defendant has included in the Arbitration Procedure a severability clause, which demonstrates its intent to create a binding contract. Thus, contrary to Plaintiff's argument, and contrary to the Court's July 20 Order, Defendant's express reservation of the right to modify, suspend, or terminate the EDRP does not make the arbitration agreement unenforceable.

### 2.  Plaintiff's Assent

Plaintiff also argues that his own assent to the arbitration agreement is invalid because the language found in Plaintiff's employment application was not an agreement to arbitrate all claims arising from his employment. Plaintiff relies largely on a footnote from a Michigan Court of Appeals case explaining,

> The enforceability of an arbitration agreement may, in some circumstances, turn on whether the employee was given adequate notice and knowingly waived his right to litigate claims in court. *Kummetz v Tech Mold, Inc.*, 152 F.3d 1153 (9th Cir. 1998); *Prudential Ins Co of America v Lai*, 42 F.3d 1299 (9th Cir. 1994). Without adopting the reasoning of *Kummetz* or *Lai*, we would note that employers should be aware that arbitration agreements may be challenged on principles such as adequate notice and knowing waiver.

*Rembert v. Ryan's Family Steak Houses, Inc.*, 596 N.W.2d 208, 228 n.34 (Mich. Ct. App. 1999). Plaintiff argues, "It cannot be honestly contended that the information contained in the employment application clearly notified Pellow that he was waiving his rights to adjudicate FMLA claims in a judicial forum and instead opting for mandatory arbitration." (Doc. 15 p. 6.)

Plaintiff's argument is misplaced. The Sixth Circuit has explicitly rejected the Ninth Circuit's "knowing" approach discussed in the above footnote, and has also rejected a rule whereby an employer is "completely at fault for failing to provide an employee with a copy

12

of the applicable exchange organization's rules when the arbitration provision . . . was plain and broad, such that a signing party should have been on notice that his claims could have been subject to arbitration." *Haskins v. Prudential Ins. Co. of Am.*, 230 F.3d 231, 241 (6th Cir. 2000). Instead, the Sixth Circuit has held that "a party is generally chargeable with knowledge of the existence and scope of an arbitration clause within a document signed by that party, in the absence of fraud, deception, or other misconduct that would excuse the lack of such knowledge." *Id.* at 239 (quoting *Beauchamp v. Great West Life Assurance Co.*, 918 F. Supp. 1091, 1098 (E.D. Mich. 1996)).

According to this standard, the Sixth Circuit ruled in a factually similar case as follows:

> [The plaintiff] Haskins signed the U-4 Form. However, he claims that since he never received a copy of the NASD rules, he was never informed of the rights he would surrender by agreeing to arbitrate and therefore should not be required to arbitrate his claims. However, ignorance as to the terms of the U-4 Form is no defense. Because Haskins signed the U-4 Form, which informed him that he would be bound by the NASD rules requiring him to arbitrate his claims arising out of termination of his employment, and because there has been no showing of fraud, duress, mistake, or some other ground upon which a contract may be voided, Haskins is required to arbitrate his claims.

*Id.* at 235.

In the present case as well, Plaintiff signed an employment application stating, "I agree that I will be governed by and must comply with Chrysler's Employee Dispute Resolution Process, which requires many employment-related claims to be resolved exclusively through arbitration." (Doc. 12 Ex. 1.) Plaintiff argues that the phrase "many employment-related claims" did not put him on notice that he would have to arbitrate FMLA claims. But pursuant to Sixth Circuit precedent, ignorance of the terms is no defense, and

13

absent a showing of "fraud, duress, mistake, or some other ground upon which a contract may be voided," Plaintiff is bound to the contract he signed.

In light of the cases discussed above and the documents at issue here, it is clear that Plaintiff and Defendant intended to and did create a binding contract to adhere to Defendant's EDRP. Plaintiff's job application bears the hallmarks of an enforceable contract, complete with promises and consideration, and the EDRP contains a severability clause stating that the EDRP should be enforced to the fullest extent possible. Unlike the employee handbook at issue in *Heurtebise*, the documents at issue here do not disclaim contract status. Defendant's express reservation in its EDRP of the "right to amend, modify, suspend, or terminate all or part of the EDRP" does not render the contract unenforceable. Rather, unless and until Defendant actually makes changes to the EDRP, both parties remain bound to it. Similarly, Plaintiff's acceptance of the contract's provision requiring him to arbitrate employment-related claims was sufficiently specific to create a binding contract. The EDRP is enforceable.

### B. Arbitrability of FMLA Claims

Plaintiff next argues that because the FMLA explicitly provides for "action[s] to recover damages or equitable relief . . . in any Federal or State court of competent jurisdiction," 29 U.S.C. § 2617(a)(2), FMLA claims are not arbitrable.

Although the Sixth Circuit has not ruled on this issue, the Fourth Circuit has held that because there is no language in the FMLA or in related regulations prohibiting arbitration of claims, and because of the "strong federal policy in favor of arbitration," FMLA claims are arbitrable. *O'Neil v. Hilton Head Hosp.*, 115 F.3d 272, 273-74 (4th Cir. 1997). Several district courts in the Sixth Circuit have adopted this reasoning. *See, e.g., O'Hara v. Mt.*

14

*Vernon Bd. of Educ.*, 16 F.Supp 2d 868, 881 (S.D. Ohio 1998); *Brinkerhoff v. Zachry Constr. Corp.*, 2005 U.S. Dist. LEXIS 33333, *15-16 (S. D. Ohio July 15, 2005); *Mason v. BFS Diversified Prods., LLC*, 2006 U.S. Dist. LEXIS 19310, *10 (E.D. Ky. Apr. 13, 2006). This Court agrees with these authorities.  In the absence of any indication to the contrary from Congress, Plaintiff's FMLA claim is arbitrable.

### C. Abandonment of the Arbitration Process

Plaintiff contends that Defendant's abandonment of the five-step EDRP process constitutes grounds to invalidate the entire agreement.  As Plaintiff points out, the AAA denied his demand for arbitration, stating that it was "unable to process [his] request until Part[s] B and D are completed."  (Doc. 15 Ex. O.)  Plaintiff states that "his demand for arbitration was denied because DCS did not provide its responses," and suggests that Defendant created "an intentionally laid trap for the unwary employee," which deprived him of an ability even to arbitrate his claim.  (Doc. 15 p. 18.)

Far from abandonment of the process, however, the letter from the AAA merely establishes that Defendant had *yet to* respond.  As noted above, Plaintiff ignored the EDRP procedures and filed both Part A and Part C on June 22.  At that time, Defendant had fifteen calendar days in which to respond to Part A.  If Defendant failed to respond within fifteen days, Plaintiff was presumably free to jump to Part E and demand arbitration from the AAA.  But Plaintiff did not wait fifteen days, instead demanding arbitration immediately.  In fact, the letter from the AAA to Plaintiff is dated June 27, whereas Defendant did not complete Part B until July 6.  Thus, it is not surprising that the AAA denied Plaintiff's demand.

15

Plaintiff has completely disregarded the terms of the EDRP.  Instead of following the five-step process to seek a resolution to his dispute with Defendant--a potentially amicable resolution for all parties--he completed Parts A and C at once, and then demanded arbitration before even giving Defendant a chance to respond.  Contrary to his argument, it was *Plaintiff* who abandoned the EDRP process.

### D. Effective Vindication of Rights[7]

In *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 628 (1985), the Supreme Court explained,

> By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum. It trades the procedures and

---

[7]The Court's July 20 Order included the following footnote:

> Although it is unnecessary for the Court to reach this issue, the Arbitration Procedure contains a number of provisions that are unenforceable as they do not permit the effective vindication of Plaintiff''s rights.  Arbitration Procedure § 6, ¶ 2 does not allow the arbitrator to award pay in lieu of future earnings.  The Sixth Circuit, however, has held that front pay, or pay in lieu of future earnings, is an appropriate remedy under the FMLA.  *See Arban v. West Publ'g Corp.*, 345 F.3d 390, 405 (6th Cir. 2003).  Arbitration Procedure § 5, ¶ 3, (3) precludes the arbitrator from deciding any dispute based [on] benefits, though the FMLA provides that benefits can be awarded as damages. 29 U.S.C. § 2671(a)(1)(A)(i)(I).  Arbitration Procedure § 6, ¶¶ 4-5 allows Defendant to choose whether to pay damages or to reinstate the employee, but determining damages is the role of the judicial forum, and not the defendant. *Reithmiller v. Blue Cross & Blue Shield*, 390 N.W.2d 227, 233 (Mich. Ct. App. 1986).  Finally, Arbitration Procedure § 6, ¶ 3 forces the arbitrator to deduct from any damages money received by an employee from collateral sources. This clause goes directly against Michigan's collateral sources doctrine, and therefore does not allow Plaintiff the remedies that he could receive in court. *See generally Tebo v. Havlik*, 343 N.W.2d 181 (Mich. 1984).

(Doc. 7 p. 18 n.3.)  Although the outcome here is the same, the Court wishes to supplant its relatively brief discussion with a more thorough analysis.

16

opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration.

Although the plaintiffs in *Mitsubishi* argued that arbitration would undermine the deterrent purposes of the statutes upon which their lawsuit was based, the Court held that "so long as the prospective litigant effectively may vindicate its statutory cause of action in the arbitral forum, the statute will continue to serve both its remedial and deterrent function." *Id.* at 637. Thus, as long as the Arbitration Procedure does not force Plaintiff to forego any substantive remedy, or prevent the effective vindication of his statutory cause of action, it is enforceable.

Even assuming that there are problematic portions of the Arbitration Agreement, however, the first question is whether to deem the entire EDRP unenforceable, or simply to sever the unenforceable portions from the agreement. Severability of a portion of an agreement is determined by looking at the parties' intent at the time of the agreement and at the surrounding circumstances. *Great Earth Companies, Inc. v. Simons,* 288 F.3d 878, 890 (6th Cir. 2002). Here, the Arbitration Procedure contains a severability clause, which states that "if any provision of this EDRP is determined by a court to be invalid or unenforceable, the validity, legality, and enforceability of the remaining provisions will not be affected by the determination. . . ." (Doc. 12 Ex. 3 § 11.) Thus, the evidence of the parties' intent weighs heavily in favor of severability.

Moreover, the Supreme Court has instructed that any doubts as to arbitrability should be resolved "in favor of arbitration," *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983), and the Sixth Circuit has held that where an arbitration agreement contains a severability provision, "courts should not lightly conclude that a

17

particular provision of an arbitration agreement taints the entire agreement." *Morrison v. Circuit City Stores*, 317 F.3d 646, 675 (6th Cir. 2003) (citing *Great Earth Cos. v. Simons*, 288 F.3d 878, 890-91 (6th Cir. 2002)).  The same principles apply under Michigan law:  "A general rule of contract law provides that the failure of a distinct part of a contract does not void valid, severable provisions.  Furthermore, Michigan has a strong public policy favoring arbitration to resolve disputes." *Woodworth, Inc. v. Five Pointes Constr., Inc.*, 1998 Mich. App. LEXIS 1092, *7 (Mich. Ct. App. Oct. 23, 1998) (citing *Samuel D Begola Services, Inc. v. Wild Bros.*, 534 N.W.2d 217, 220 ( Mich. Ct. App. 1995); *Jozwiak v. N. Mich. Hosp., Inc.*, 524 N.W.2d 250, 252 (Mich. Ct. App. 1994)).  Thus, the Court will sever any provisions of the Arbitration Procedure that would force Plaintiff to forego any substantive remedy or to allow for the effective vindication of Plaintiff's rights.

### 1.  Pay in Lieu of Future Earnings or Benefits

Plaintiff first argues that the Arbitration Procedure precludes the arbitrator from awarding pay in lieu of future earnings or benefits, or "front pay," whereas a court could do so.  Front pay is an equitable remedy that might be necessary to make a plaintiff whole where, for example, he had found other work.  *See Arban v. West Publ'g Corp.*, 345 F.3d 390, 406 (6th Cir. 2003).

The Arbitration Procedure provides that "the Arbitrator may award any remedy or relief that a court could grant, except that the Arbitrator may not award pay in lieu of future earnings or benefits . . . ."  (§ 6, ¶ 2.)[8]  Under the FMLA, employers are liable for damages

---

[8]Defendant has twice misquoted this language--once without so much as an ellipse--by omitting the portion beginning with, "except that . . . ."  This material language defeats one of Defendant's arguments.  Whether intentionally misleading or simply careless, the Court finds such misrepresentations of the record inexcusable.  (*See* Doc. 12 p. 3; Doc. 16

including "any wages, salary, employment benefits, or other compensation denied or lost," 29 U.S.C. § 2671(a)(1)(A)(i)(I), as well as "such equitable relief as may be appropriate, including employment, reinstatement, and promotion."   29 U.S.C. § 2671(a)(1)(B). Although the statute does not explicitly provide for front pay, the Sixth Circuit has held that it is one of the equitable remedies available under the FMLA.  *Arban*, 345 F.3d at 405-06. Whether to award front pay is a legal question, whereas the amount appropriately to be awarded is a factual one.  *Id.* at 406 (citing *Roush v. KFC Nat'l Mgmt.* Co., 10 F.3d 392, 398 (6th Cir. 1993)).  Here, both questions must be decided by the arbitrator, rather than Defendant.  Since the Arbitration Procedure may force Plaintiff to forego a substantive remedy, the provision, "except that the Arbitrator may not award pay in lieu of future earnings or benefits," shall be severed from Arbitration Procedure § 6, ¶ 2.

### 2.  Liquidated Damages

Plaintiff next argues that although the FMLA provides for liquidated damages, 29 U.S.C. § 2671(a)(1)(A)(iii), "[t]here is no provision granting the arbitrator authority to award liquidated damages."  (Doc. 15 p. 15.)

The Arbitration Procedure need not list every single possible remedy available under the FMLA.  Because "the Arbitrator may award any remedy or relief that a court could grant" (and because the Court has stricken the only limitation on this provision), the Arbitration Procedure is sufficiently broad to allow liquidated damages as provided by the FMLA.

### 3.  Benefits

---

p. 4.)

Third, Plaintiff points out that under the Arbitration Procedure, the arbitrator cannot "decide any dispute that is based upon a claim that an employee is eligible to receive benefits under any Company employee benefit plan." (§ 5, ¶ 3.)  Because Plaintiff's FMLA claim may implicate his employee benefits, this provision may deprive Plaintiff of relief he could receive in court.  Accordingly, the provision in the Arbitration Procedure depriving the arbitrator of authority to "decide any dispute that is based upon a claim that an employee is eligible to receive benefits under any Company employee benefit plan or fringe benefit program" shall be severed from Arbitration Procedure § 5, ¶ 3.

### 4.  Defendant's Unilateral Right to Reject Reinstatement

Fourth, Plaintiff notes that under the Arbitration Procedure, Defendant may reject an arbitrator's reinstatement award:

> If the Arbitrator awards reinstatement, the Company will have the option, within 14 calendar days after its receipt[] of the award, to request that the Arbitrator determine an amount of damages in lieu of reinstatement.  In this event, the Arbitrator must notify the Company and the employee, within 30 calendar days after the Company's request, of the damages in lieu of reinstatement.  The arbitration hearing may be reopened at the discretion of the Arbitrator or at the request of either party for the sole purpose of presenting evidence to assist the Arbitrator in assessing such damages in lieu of reinstatement.
>
> The Company will then have the option to elect, by notifying the Arbitrator within 21 calendar days after the Company receives notice of the assessment of damages in lieu of reinstatement, to pay the employee the assessed damages in lieu of reinstatement.  The arbitrator must then enter an amended award that (1) awards the employee damages in lieu of reinstatement and (2) extinguishes and releases the Company from all of the employee's rights against the Company including, without limitation, the right to reinstatement or future employment.

(§ 6, ¶¶ 4-5.)

20

The determination of whether to award damages in lieu of reinstatement is a legal one. *See Arban*, 345 F.3d at 405-06. Thus, this provision impedes upon the arbitrator's role by giving Defendant the unilateral right to choose between remedies, thereby potentially depriving Plaintiff of a substantive remedy to which he might be entitled in court. The Arbitration Procedure provision granting Defendant the authority to reject an arbitrator's reinstatement award in lieu of damages, Arbitration Procedure § 6, ¶¶ 4-5, shall therefore be severed.

### 5. Collateral Sources

Sixth, Plaintiff takes issue with the following provision of the Arbitration Procedure: "If the Arbitrator awards back pay, the Arbitrator must deduct from the award the employee's interim earnings and any other sums paid in lieu of employment during the period covered by the back pay award, including unemployment compensation or workers compensation payments." (§ 6, ¶ 3.) Plaintiff contends that this violates the "collateral source rule."

"The collateral source rule is a substantive rule of law that bars a tortfeasor from reducing damages owed to a plaintiff by the amount of recovery the plaintiff receives from sources that are collateral to the tortfeasor." *Jackson v. City of Cookeville*, 31 F.3d 1354, 1359 (6th Cir. 1994). *See also Tebo v. Havlik*, 343 N.W.2d 181, 186 (Mich. 1984). In the Sixth Circuit, a number of cases have applied the collateral source rule to civil rights and disability cases. For example, in *Knafel v. Pepsi-Cola Bottlers, Inc.,* 899 F.2d 1473, 1480 (6th Cir. 1990), a Title VII case, the court held that worker's compensation benefits may not be offset against a back pay award. In *Rasimas v. Michigan Dep't of Mental Health*, 714 F.2d 614, 627 (6th Cir. 1983), the court held that a civil rights victim's back pay award would not be reduced by unemployment benefits he received. And in *Hamlin v. Charter*

21

*Twp. of Flint*, 165 F.3d 426, 433 (6th Cir. 1999), a disability discrimination case, the court held that pension benefits should not be deducted from damages awarded to the plaintiff.

While no court in the Sixth Circuit appears to have addressed the issue, the reasoning in civil rights and disability cases applies with equal force in the FMLA context. Moreover, as the Sixth Circuit has strongly endorsed the collateral source rule in general, *see id.* at 433-35, this Court sees no reason why it should not apply here.

Hence, the provision in § 6, ¶ 3 of the Arbitration Procedure, which provides, "If the Arbitrator awards back pay, the Arbitrator must deduct from the award the employee's interim earnings and any other sums paid in lieu of employment during the period covered by the back pay award, including unemployment compensation or workers compensation payments," shall be severed.

### 6.  Discovery Limitations

Finally, Plaintiff argues that the Arbitration Procedure "improperly limits Plaintiff to two depositions unless an arbitrator provides otherwise . . . ." (Doc. 15 p. 17.) What the Arbitration Procedure actually provides is that "[a]s a general matter, the employee and the company will each be entitled to take the depositions of two persons whose testimony is relevant to the dispute." (§2, ¶1.) Recognizing "both the need to provide a full and fair consideration . . . and the need to provide a relatively inexpensive and expeditious [resolution]," however, the arbitrator may allow further discovery. (*Id.*) Contrary to Plaintiff's argument, arbitration need not provide him with all *procedural* mechanisms of a court of law; that would defeat the purpose of arbitration. The EDRP's discovery limitations are therefore enforceable.

## IV.  Conclusion

22

Being fully advised in the premises, having read the pleadings, and for the reasons set forth above, the Court hereby orders as follows:

Defendant's Motion for Reconsideration is hereby GRANTED;

The Court's July 20, 2006 Order is hereby VACATED;

Defendant's Motion to Compel Arbitration and for Summary Judgment is hereby GRANTED.  Subject to severance of the offending provisions, this case shall proceed to arbitration pursuant to the EDRP and the Arbitration Procedure.  Because Plaintiff's sole claim is subject to arbitration, the Court hereby dismisses this case.[9]

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated:  August 31, 2006

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 31, 2006, by electronic and/or ordinary mail.

s/Carol A. Hemeyer
Case Manager

---

[9]Plaintiff's argument that dismissal of the case is inappropriate under Section 3 of the FAA is not well taken.  The Sixth Circuit has explained,

Under § 3 of the FAA, if any separate claim is referable to arbitration, then a stay of proceedings on the remaining claims is mandatory.  However, litigation in which all claims are referred to arbitration may be dismissed.  *See Alford v. Dean Witter Reynolds Inc.*, 975 F.2d 1161, 1164 (5th Cir.1992) (holding that dismissal is proper where all claims must be submitted to arbitration); *Sparling v. Hoffman Const. Co., Inc.*, 864 F.2d 635, 638 (9th Cir.1988) (holding that 9 U.S.C. § 3 does not preclude dismissal).

*Hensel v. Cargill, Inc.*, 1999 U.S. App. LEXIS 26600, *9-10 (6th Cir. 1999).  Because Plaintiff's sole claim is subject to final and binding arbitration, there is no reason for this Court to stay the proceedings.